James Butler and four associates in 1907 incorporated under the laws of New Jersey a corporation called "James Butler Grocery Company," of which they were the directors and sole stockholders, and in the State of New York and under its laws, incorporated a corporation called "James Butler, Inc.," of which they were likewise the sole stockholders and the directors. James Butler then having sold to the New Jersey corporation his chain grocery store business in New Jersey and New York, the New Jersey corporation sold the portion thereof in New York to the New York corporation, receiving in payment therefor $1,705,000 in obligations and ninety per cent. of the capital stock of the New York corporation, the remaining ten per cent. of such capital stock having been paid for in cash by and remaining the property of James Butler and his four associates. The New Jersey corporation also received as consideration for the good-will of the business in the State of New York so sold and transferred by it to the New York corporation a contract that the New York corporation would thereafter pay it yearly ninety-five per cent. of its, the New York corporation's, net profits.
In 1910 the two corporations, by appropriate resolutions passed by their respective directors, modified this ninety-five per cent. of profit agreement so that ninety per cent. of such ninety-five per cent. of net profits instead of being paid to the New Jersey corporation might be invested in the purchase of real estate in New York in the name of the New York corporation, in which corporation, as before stated, the New Jersey corporation owned ninety per cent. of the capital stock, such purchases to be for the extension and enlargement of the *Page 381 
New York corporation's business in that state. This modified arrangement has continued for ten years with highly profitable results, but was, in 1920, objected to by complainants, who have acquired some stock in the New Jersey corporation, and the court of chancery held that in modifying in 1910 the 1907 agreement as to the disposition of profits so that instead of being paid over for distribution among stockholders as dividends they might be invested in the enlargement of the business of the subsidiary company in New York, of which the New Jersey corporation was owner to the extent of ninety per cent. of the whole, the directors of the New Jersey corporation had exceeded their legal authority as directors of that corporation and must now assume or be charged with a personal liability to pay into the treasury of the New Jersey corporation the amount which would have been paid in by the New York corporation if the latter had not, in pursuance of such modification of the 1907 agreement, invested the money in the extension of its business as above set forth.
I think this is error. It will result in the New Jersey corporation receiving from Butler and his associates individually the ninety-five per cent. of the profits of the New York corporation in cash, while at the same time getting the benefit through its ownership of ninety per cent. of the capital stock of the New York corporation of ninety per cent. of the value of the real estate in which such profits were invested, in pursuance of the modification agreed upon. The New York corporation is not a party to these proceedings, although it offered to come in if complainants amended their bill to bring it in, but complainants did not do so. It is impossible, therefore, to do complete justice in the way adopted in the court of chancery. For my own part I have difficulty in understanding how the directors, in providing for the use of profits in enlarging the plant and extending the business of a subsidiary company, were committing an act ultra vires their authority. The fact that the subsidiary corporation was incorporated under the laws of another state is surely no legal reason for such a view. That would be a strange doctrine to be adopted in New Jersey. The learned vice-chancellor seemed burdened with the view that the directors *Page 382 
were disposing of "assets" of the New Jersey corporation, which I think was not so. They were dealing with "profits."
But assuming that complainants have some just ground of complaint because of the ownership by Butler and his four associates of the ten per cent. of the capital stock of the New York corporation, not owned by the New Jersey corporation, the remedy is to declare Butler et al., what they made of themselves in acting as they did as directors of the New Jersey corporation, viz., trustees for the New Jersey corporation of their ten per cent. of the stock of the New York corporation, and to require the transfer of this stock by Butler et al., to the New Jersey corporation, and an accounting by them for any dividends, if any, or other profits received therefrom since the 1910 modification of the profits agreement, in which these gentlemen participated as directors of the New Jersey corporation, and this remedy is now tendered by Butler et al. in their brief. Certainly, complainants have not, by their ten years of silence, earned the right to be paid their share of the ninety-five per cent. of the profits throughout that period, twice.
I am requested by Justice Campbell and by Judges Gardner and Van Buskirk to say that they join in the views herein expressed.